CAMPBELL<br>v.<br>MYERS.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## JULIE S. BONVILLAIN v. AUBIN BOURG, Sheriff, et al.

The force and effect of a judgment is to be determined by reference to the state of things existing at the time of its rendition.

The plea of *res judicata* is to be decided by reference to the matters put at issue by the pleadings. So a general and *prima facie* absolute judgment against the defendants is to be construed *secundum allegata*, and where they are sued as attorneys in fact, such judgment does not bind them personally. 7 N. S. 432; 4 N. S. 496. In like manner a general judgment against parties sued as commercial partners is virtually one *in solido*. 3 L. 282 ; 5 L. 287. A judgment against a third possessor is not a judgment *in personam*. 4 L. 400, and other authorities herein cited.

Where a *causa superveniens*, the severance of the marriage tie occurs, property (dotal) previously inalienable will be subject, like all other property of the defendant, to seizure and sale under execution. 8 Rob. 457.

APPEAL from the District Court of Terrebonne, *McVea*, J. *Connelly & Rightor*, for plaintiff. *F. S. & J. S. Good*, for defendants and appellants.

MERRICK, C. J. This suit is commenced by injunction. The important facts are these: In 1848 the plaintiff, then a widow lady possessed of a. small plantation and four slaves, married one N. B. Beal, who had no property. Before the marriage a contract was authenticated in due form, by which the land and slaves owned by the plaintiff were settled in dower. In 1854 Bodley & Co. and Lobit & Charpentier, defendants in this suit, obtained by confession judgment against Beal and wife *in solido*, on what are alleged to be debts of the husband Beal.

In 1855 Bodley and Lobit & Charpentier issued execution on these judgments, and among other things seized the tract of land and slaves settled in dowry. Beal and wife in June injoined the executions, made the judgment creditors parties, and prayed that the judgments might be annulled as to the wife, and injoined as to the dotal property. In October, - 1856, the following judgment was pronounced, on the construction of which this controversy mainly depends, viz:

"N. B. Beal et al.
    v.     } 3d Dist. Court, Parish of Terrebonne.
"Joseph A. Gagné, Sheriff, et al.

"This case having been fixed for trial, was taken up, and after hearing the evidence and the argument of counsel, and by reason of the law and the evidence: It is ordered, adjudged and decreed, that the demand of plaintiffs, that the judgments numbered 1275 and 1239, described in their petition be annulled and set aside, that said demand be rejected. It is further ordered and decreed, that the injunction sued out against defendants, on the first day of June, A. D. 1855, be, and is hereby confirmed. and perpetuated against all said defendants, so far as to restrain and inhibit them from any further proceedings under the judgments 1275 and 1239, on the docket of this court, against the land and slaves Mistress

Julie Sidloi Bonvillain described in her petition, and that of Napoleon B. Beal, to wit, a certain tract of land having seven and a half arpents front on the right bank of Bayou Black, and containing three hundred superficial arpents; as also the slaves George, then, in 1848, aged 35 years; Joe, aged 20 years; Sarah, aged about 25; and Agey, aged about 45 years. And it is further ordered, that the claim of defendants for damages on account of the issuance of the injunction be rejected, and that they be condemned to pay the costs of this suit. Thus done, &c., &c., Oct. 16, 1846."

. Subsequently the marriage was dissolved by a divorce, and Beal has contracted a second marriage.

Thereupon Bodley & Co. and Lobit & Charpentier issued new executions upon their judgments, and they have seized the same property settled in dower and levied upon under the former executions, which were injoined.

This therefore is a second injunction to restrain the sale of the same property. Both parties rely upon the judgment above recited. The plaintiff contends that it is a perpetual bar to the seizure of this property, and even if it be not so considered, that dotal property cannot, after the dissolution of the marriage, be made responsible for judgments which could not be enforced during its existence.

The defendants plead the same judgment as the thing adjudged, and they have also filed in this Court the pleas of prescription to the action of nullity against their original judgments.

An attentive examination of the judgment of October, 1856, will show, first, that the two judgments in favor of Bodley & Co. and Lobit & Charpentier, then injoined, were recognized as binding upon the plaintiff, and the court refused to annul the same; and secondly, that the specific property injoined was exempted from seizure under the judgments, and the defendants were restrained and inhibited from any further proceedings under the said judgments against the particular property described, thus leaving the judgment creditors free to seize any other property of their debtors upon their judgments.

The judgment, although absolute in its terms, is somewhat inconsistent with itself, and the District Judge has not enunciated any of the grounds upon which he based his decision. Hence the difficulty of its interpretation. The plaintiffs in injunction in that action demanded the nullity of the two judgments and the perpetuation of the injunction, on the ground that Mrs. Beal could not be bound for the debts of the community, and also on the ground that the property described was dotal, and was inalienable during the marriage. The Judge might, if justified by the proof, have affirmed both grounds of injunction. Instead of so doing, he refused to annul the original judgments, and yet he perpetuated the injunctions and restrained the defendants from proceeding against the property seized. If it is not permitted us to look into the evidence in the suit in order to determine how the facts ought to have been decided, and thus to judge of the motives which have influenced the Judge in arriving at his conclusions, we may do so under our system of practice, perhaps in order to learn the issues before him. At all events, we can, in the absence of reasons given for the decree, examine the pleadings and ascertain what matters were presented for adjudication *at the time* the decree

was rendered; for it is elementary, that the force and effect of a judgment is to be determined by reference to the state of things existing at the time of its rendition. On referring to the petition, we find that the plaintiff and her husband alleged that the debt was a debt of the husband, and that the property seized was dotal, and that it "could not be alienated or hypothecated *during the existence of the marriage.*"

If the first of these positions had been found to be true by the Judge, the law would have required that the judgments injoined should have been annulled; for the action of nullity and injunction had been brought within the year. But this was not done.

If the second ground of injunction were established by proof, then the plaintiffs in that action were entitled to their injunction, and to have the inalienability of the dotal property during marriage recognized, according to their allegation in the petition. The decree, by reason of its general terms, goes beyond the allegation, and the question arises, shall the general language of the same be restrained to the issue made and the subject matter under consideration at the time it was pronounced?

The authorities, we think, admit of an affirmative answer. In the case of *Saul* v. *His Creditors*, this Court said that the plea of *res judicata* was to be decided by reference to the matters put at issue by the pleadings. 7 N. S. 432. So a general and *prima facie* absolute judgment against the defendants is to be construed *secundum allegata;* and where they are sued as attorneys in fact, such judgment does not bind them personally. 4 N. S. 496. In like manner, a general judgment against parties sued as commercial partners is virtually one *in solido.* 3 L. R. 282, 283, *Prall* v. *Peet's Curator;* 5 L. R. 287, *Rochelle's Heirs* v. *Cox.* In the case of *Trepagnier* v. *Williams,* 4 L. R. 400, a judgment in these words was considered, viz: "The plaintiff has proved the signature of the drawer and endorser of the note sued on; has exhibited the act of mortgage and a judgment against the mortgagor. This entitles him to judgment against the third possessor. It is therefore ordered, that D. C. Williams do recover of the defendant Trepagnier the sum of ten thousand dollars, with interest until paid, and costs of suit, and that the mortgage property be sold to satisfy the same;" and it was held that notwithstanding the general terms in which the decree was couched, the judgment against Trepagnier was not *in personam,* but against him as third possessor only. See also 6 Savigny, p. 361, *et seq.,* and 378 II, Berlin ed.

If we apply the principles contained in these decisions to the case at bar, it relieves the judgment in question of its seeming inconsistency. It is left to apply to the state of facts then existing, and to protect the dotal property of the wife so long as it remained inalienable. The *causa superveniens,* the severance of the marriage tie, occurring since the former decree was pronounced, has impressed another character upon the property seized, and it ought to be considered now subject (like all other property of the plaintiff) to alienation. It would therefore be somewhat absurd to hold that the judgments held by the defendants are valid against the plaintiff, and that they may, under the statute, be perpetually revived against the plaintiff, and after her death against her heirs, and be enforced against any other property she or her heirs may own, and even against the proceeds of the plantation and slaves, if they should be sold by the plaintiff or her heirs, and yet that she might live with impunity upon the

property in question; and that with reference to this debt, she and her heirs might enjoy the same in perpetuity. Perhaps we might, without much impropriety, apply the language of Julian to this case: *Evidenter enim iniquissimum est, proficere rei judicatæ exceptionem ei contra quem judicatum est.* Dig. Lib. 44, T. 2, Lex 16. Law 17 of the same title may also be cited as somewhat analogous to the present case: *Si rem meam à te petiero, tu antem ideo fueris absolutus, quod probaveris sine dolo malo te desiisse possidere; deinde postea cœperis possidere, et ego a te petam, non nocebit mihi exceptio rei judicatæ.* See also Dig. Lib. 16, T. 2, Lex 7, § 1.

We conclude, therefore, that the judgment of October, 1856, does not prevent the defendants from issuing execution and seizing the property in question.

The judgments rendered in 1854, as well as that herein recited, are no longer open to the action of nullity, and the plea of prescription to a demand in nullity must be maintained. 7 Rob. 92, *Farier* v. *Peyroux;* also 7 Rob. 94, *Griffing* v. *Bonner;* 3 Rob. 115.

We have already intimated that dotal property, after the dissolution of the marriage, ceases to be out of commerce. *Quernin* v. *Rivarde*, 8 Rob. 457.

The judgments injoined bear eight per cent. interest, and this does not appear to us to be a case in which more than nominal damages should be allowed. The case is by no means free from difficulty, and the plaintiff's counsel undoubtedly believed she had good grounds of injunction.

It is, therefore, ordered, adjudged and decreed by the Court, that the judgment of the lower court be avoided and reversed, and that plaintiff's demand be rejected and said injunction dissolved; and that the plaintiff in injunction and her surety *in solido* on the injunction bond, Lovinski Bonvillain, pay ten dollars damages and the costs of both courts.

VOORHIES, J., absent.